JOHN MOYANT, JR., PLAINTIFF-RESPONDENT, v. BOR-OUGH OF PARAMUS, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-APPEL-LANT.

Argued June 4, 1959—Decided August 3, 1959.

*Mr. Frank J. Glock* argued the cause for defendant-appellant (*Mr. Guy W. Calissi,* attorney and of counsel; *Mr. Glock* on the brief).

*Mr. Francis J. Simone* argued the cause for plaintiff-respondent.

The opinion of the court was delivered by

HALL, J. We are concerned here with the validity of certain provisions of an ordinance of the defendant municipality "regulating and licensing solicitors and canvassers" struck down by the Superior Court, Law Division, as generally unlawful under state law or invalid as to plaintiff under the Commerce Clause of the Federal Constitution. The municipality appealed and we certified the cause on our own motion before it was heard in the Appellate Division, pursuant to R. R. 1:10–1(a).

Questions are involved which have not heretofore been directly passed upon by the court of last resort in this State. They can best be introduced and appreciated by an analysis of the ordinance, but certain fundamentals should first be noticed. The form and pattern of this local legislation is found in many of our municipalities and it concededly follows a model prepared by a national organization of municipal law officials for general use throughout the country. Broad in scope and strict and detailed in its regulatory and procedural features, the scheme is one of regulation by municipal registration and license, issuable only on compliance with numerous conditions, many of them on the onerous side. Inherently underlying the issues presented to us is the frequent problem of accommodation of the right to pursue an otherwise lawful business and earn a livelihood thereby with the interest of protection of the citizenry, under the general police power, from evils and bad features connected with it, involving considerations of both constitutionality and municipal power. We are mindful of the compulsory admonition of our State Constitution (Art. IV, sec. VII, par. 11) that the provisions thereof and of any law concerning municipal corporations "shall be liberally construed in their favor" and of the familiar rule of the presumption of validity of a municipal ordinance. Kozesnik v. Montgomery Township, 24 N. J. 154, 167 (1957); Bibb v. Navajo Freight Lines, 359 U. S. 520, 79 S. Ct. 962, 3 L. Ed. 2d 1003 (1959). On the other side of the coin

is the postulate that a local municipality is but a creature of the State, capable of exercising only those powers granted to it by the Legislature (*Wagner v. Mayor and Municipal Council of City of Newark,* 24 *N. J.* 467 (1957)), and the equally important truism that the presumption of validity referred to is only a presumption and may be overcome or rebutted not only by clear evidence *aliunde,* but also by a showing on its face or in the light of facts of which judicial notice can be taken, of transgression of constitutional limitation or the bounds of reason. *Guill v. Mayor and Council of City of Hoboken,* 21 *N. J.* 574, 581 (1956); *State v. Wittenberg,* 50 *N. J. Super.* 74, 78 (*App. Div.* 1957), affirmed 26 *N. J.* 576 (1958).

The ordinance commences by making it unlawful to engage in the business of solicitor or canvasser without first obtaining "a permit and license therefor" in compliance with the ordinance provisions. It defines canvasser or solicitor as any individual, whether resident of the borough or not (so it is not discriminatorily bad in this respect, *Morgan v. Orange,* 50 *N. J. L.* 389 (*Sup. Ct.* 1888); *cf. Haddon Heights v. Hunt,* 90 *N. J. L.* 35 (*Sup. Ct.* 1917), affirmed 91 *N. J. L.* 696 (*E. & A.* 1918); *Lynch v. City of Long Branch,* 111 *N. J. L.* 148 (*Sup. Ct.* 1933)), travelling by foot or any other conveyance "from place to place, from house to house, or from street to street," taking or attempting to take orders for the sale of goods for future delivery or for services to be performed in the future, whether or not a sample is carried or displayed and whether or not advance payments are collected. The language is so broad that, on its face, wholesale salesmen periodically calling on retail merchants would appear to be within its compass. *Cf. Hewson v. Inhabitants of Tp. of Englewood,* 55 *N. J. L.* 522 (*Sup. Ct.* 1893). (Persons selling goods with simultaneous delivery are designated as "peddlers," "hawkers" or "hucksters," and are covered in the borough by a companion ordinance having a generally similar licensing and regulatory scheme.) A solicitor, by the ordinance, also includes any

person who leases or uses any building, hotel room, shop or any other place for the sole purpose of exhibiting samples and taking orders for future delivery. No time limitation for such activity being prescribed, the ordinance would seem to apply to one who had a permanent store doing business only by sample.

The license must be sought by a sworn written application in duplicate, filed with the borough clerk, which must contain or be accompanied by the following data: name and description of applicant, with permanent home address and full local address; description of the nature of the business and goods to be sold; if employed, name and address of the employer, together with credentials establishing the exact relationship; the length of time for which the right to do business is desired; the place where the goods to be sold or orders taken therefor are manufactured or produced, where such are located at the time the application is filed and the proposed method of delivery; a two-inch-square photograph of the applicant taken within 60 days; the fingerprints of the applicant; "the names of at least two reliable property owners of the County of Bergen and State of New Jersey, who will certify as to the applicant's good character and business respectability, or, in lieu of the names of references, such other available evidence as to the good character and business responsibility of the applicant as will enable an investigation to properly evaluate such character and business responsibility; a statement as to whether or not the applicant has been convicted of any crime, misdemeanor, or violation of any municipal ordinance, the nature of the offense and the punishment or penalty assessed therefor; and a statement by a reputable physician of the County of Bergen * * *, dated not more than ten (10) days prior to the submission of the application, certifying the applicant to be free of contagious, infectious, or communicable disease." A $5 fee is to be paid at the time of filing "to cover the cost of investigation of the facts stated therein."

The original of the application is to be referred to the chief of police, "who shall cause such investigation of the applicant's business and moral character to be made as he deems necessary for the protection of the public good. If as a result of such investigation, the applicant's character or business responsibility is found to be unsatisfactory," the police chief shall endorse his disapproval and the license shall not issue. If such is found "to be satisfactory," the chief shall endorse his approval and execute a license to be formally issued by the clerk upon payment of the license fee. The license shall be exhibited at the request of any citizen. To be issued at the same time is a badge setting forth the words "Licensed Solicitor," the period for which the license is issued and the number thereof in letters and figures easily discernible from a distance of ten feet, to be conspicuously worn on the front of a licensee's outer garment.

The next provisions of the ordinance deal with the license fee, which is flat rate and fixed at $25 and "shall be for a six (6) month period." Since a later section specifies that all licenses shall expire on the date specified therein and there is no provision for renewal, the whole procedure would have to be gone through again every six months by those solicitors desiring to engage in the business in the municipality continuously or at periodic intervals.

Then comes a fee adjustment section reading in this fashion:

"None of the license fees provided for by this ordinance shall be so applied as to occasion an undue burden upon interstate commerce. In any case where a license fee is believed by a licensee or applicant for license to place an undue burden upon such commerce, he may apply to the Mayor and Council for an adjustment of the fee so that it shall not be discriminatory, unreasonable, or unfair as to such commerce. Such application may be made before, at, or within six (6) months after payment of the prescribed license fee. The applicant shall, by affidavit and supporting testimony, show his method of business and the gross volume or estimated gross volume of business and such other information as the Mayor and Council may deem necessary in order to determine the extent, if any, of such undue burden on such commerce. The Mayor and Council

shall then conduct an investigation, comparing applicant's business with other businesses of like nature and shall make findings of fact from which he shall determine whether the fee fixed by this ordinance is unfair, unreasonable or discriminatory as to applicant's business and shall fix as the license fee for the applicant, an amount that is fair, reasonable and non-discriminatory, or, if the fee has already been paid, shall order a refund of the amount over and above the fee so fixed. In fixing the fee to be charged, the Mayor and Council shall have the power to base the fee upon a percentage of gross sale, or any other method which will assure that the fee assessed shall be uniform with that assessed on businesses of like nature, so long as the amount assessed does not exceed the fees as prescribed by Section 5(a) of this ordinance. Should the Mayor and Council determine the gross sales measure of the fee to be the fair basis, he may require the applicant to submit, either at the time of termination of applicant's business in the Borough of Paramus or at the end of each three (3) month period, a sworn statement of the gross sales and pay the amount of fee therefor, provided that no additional fee during any one calendar year shall be required after the licensee shall have paid an amount equal to the annual license as prescribed in Section 5(a) of this ordinance."

The ordinance further requires a bond in the sum of $1,000 running to the borough, with surety acceptable to and approved by the borough attorney, to be filed with the clerk by certain applicants presumably just prior to the issuance of the license. The bond is to be furnished only by non-residents of the borough or residents representing a firm whose principal place of business is located outside the State. There is no requirement of designation of an agent for acceptance of the service of process. The condition of the obligation is that the licensee will fully comply with all ordinance and statutory provisions regulating the business of solicitor "and guaranteeing to any citizen of the Borough of Paramus that all money paid as a down payment will be accounted for and applied according to the representations of the solicitor and further guaranteeing * * * that the property purchased will be delivered according to the representations of said solicitor." Action may be brought thereon in the name of the borough to the use or benefit of the aggrieved person. It is to be noted that the con-

dition does not cover the agreed furnishing or performance of services, as for example home improvements, which are included in the definition of soliciting.

Also contained in the ordinance are provisions giving the right of appeal to the governing body and hearing thereon to an applicant denied a license by the chief of police, and for revocation of a license by the same body, after notice and hearing, for fraud, misrepresentation or false statement in the license application or in the course of carrying on the business, any violation of the ordinance, conviction of "any crime or misdemeanor involving moral turpitude" or conducting the business "in an unlawful manner or in such a manner as to constitute a breach of the peace or to constitute a menace to the health, safety, or general welfare of the public."

The penalty for violation is fixed at a fine not to exceed $200 or imprisonment for not more than 90 days, or both. Also found is a detailed severance clause specifying the legislative intent to be that, in the event of invalidity of any section, sentence, clause or phrase, the remainder shall continue in effect.

The companion peddlers ordinance referred to is substantially identical, except that there is no investigation fee to be paid on the filing of the application; the license fee is on a calendar year basis at the annual amount of $50 without any prorating, which is specified to be for the purpose of raising revenue; there is no provision for adjustment thereof, and neither a bond nor badge is required.

The case was tried without a jury on a stipulation of facts with no oral testimony, and comes to us on an agreed statement in lieu of the record. *R. R.* 1:6–2.

Plaintiff, a resident of New York City, is the regional sales representative of the National Literary Association, of Terre Haute, Indiana, a company engaged in the business of building up magazine circulation throughout the country. He, in this capacity, supervises and manages a crew of salesmen who solicit subscriptions and renewals to nationally

known and published magazines by going from house to house in the various municipalities throughout the United States.

The method of doing business is for the salesman to take an order directly from the customer, presumably with a partial payment. The customer is then required to mail a slip to the home office of the company with the balance of the subscription price. The order when so received is accepted in Indiana and forwarded to the publisher at the location of its place of business. The publisher then mails the magazines directly to the subscriber. It is admitted that plaintiff, the salesmen and their employer are engaged in interstate commerce.

Having decided in March 1958 to solicit subscriptions in Paramus, plaintiff contacted the borough clerk concerning license requirements, and his attorney twice wrote the mayor and council requesting issuance without compliance with certain provisions contended to be an unreasonable burden on interstate commerce. No reply was received, and about May 1 plaintiff and his salesmen personally applied to the clerk for licenses. He advised they would be issued without payment of the $25 license fee and posting of the bond if the other ordinance provisions were met. Applications were then filed on that basis, and arrangements made to commence soliciting. Approximately four weeks later the clerk denied the licenses unless compliance was had with every ordinance requirement.

This action was instituted immediately thereafter. It sought injunctive relief restraining enforcement of the ordinance against plaintiff and his salesmen and a declaratory judgment that it is inapplicable in its entirety to plaintiff and if applied is unconstitutional and invalid. The burden of the complaint was divided into two facets. First, relating to state law, it was alleged that the borough was without statutory authority to enact an ordinance regulating solicitors and canvassers, and that the delegation to the chief of police of the power to approve the grant of licenses was

invalid by reason of the absence of sufficient standards to govern the determination. Secondly, the requirements of the ordinance as applied to plaintiff and his salesmen are arbitrary and unreasonable and constitute an unconstitutional infringement and burden on plaintiff's right to engage in interstate commerce within the borough.

A temporary injunction was issued pending final hearing, restraining defendant from enforcing against plaintiff and his salesmen so much of the ordinance as required payment of the $5 investigation fee, and the $25 license fee and the posting of the bond. Business was thereafter engaged in by plaintiff and the salesmen in the borough on that basis.

While plaintiff's complaint is broad in scope and his attack not particularized in the vague pretrial order, the precise issues presented and ordinance provisions contested by him boiled down at the trial to a relatively few, as noted from the oral opinion of the trial judge and the judgment. The court found there is state statutory authority for municipal regulation of solicitors and canvassers and such, generally speaking, is a proper subject of the local police power, without expressly considering the reasonableness of the ordinance provisions, separately or as a whole. It specifically held that the provisions for the $25 license fee, the furnishing of the bond and requiring a medical certificate by a doctor within the county each constituted an unreasonable burden upon interstate commerce and were therefore invalid as applied to plaintiff and his salesmen. It was further concluded that the delegation of power to the chief of police was unlawful, under state law, by reason of the absence of sufficient standards. The effect of the decision, in view of the severability clause noted by the court, is to strike down the license fee, bond and medical certificate requirements with respect only to persons engaged in interstate commerce, and that provision giving power to the police chief to approve or disapprove licenses in the case of any applicant whether the nature of the soliciting be interstate or intra-

state. The remaining provisions of the ordinance stand as to both types of business.

We are directly concerned on this appeal only with the respective contentions of the parties based on these issues. Defendant urges as grounds for reversal that the three provisions struck down under the Commerce Clause of the Federal Constitution do not constitute an unreasonable burden on interstate commerce and that there are legally sufficient standards present to guide the police chief. Plaintiff, in addition to contending for affirmance on the basis of the determination below in these respects, argues that the three provisions are also unlawful as unreasonable under the police power and that the license fee is further invalid for lack of state legislative authority. Neither party raises any question concerning the applicability or effect of the severability clause as determined below.

*R. S.* 40:48–2 is the express grant in our statutes of broad general police powers to municipalities. It provides:

"Any municipality may make, amend, repeal and enforce such other ordinances, regulations, rules and by-laws not contrary to the laws of this state or of the United States, as it may deem necessary and proper for the good government, order and protection of persons and property, and for the preservation of the public health, safety and welfare of the municipality and its inhabitants, and as may be necessary to carry into effect the powers and duties conferred and imposed by this subtitle, or by any law."

This court has held that the section authorizes a municipality to take such action as it deems necessary and proper for the purposes specified "subject only to the limitation that such action not be prohibited by or inconsistent with the Constitution or the other statutes," and that the power so authorized is in addition to any powers elsewhere more specifically granted. *Fred v. Mayor and Council of Borough of Old Tappan,* 10 *N. J.* 515, 519–520 (1952). The parties stipulated that defendant was acting under this section in adopting this ordinance.

However, plaintiff says that a legislative intent to preclude municipal power to regulate solicitors and canvassers at all is to be derived from the fact that the classification is not mentioned in *R. S.* 40:52–1, as amended, in which hawkers, peddlers and itinerant vendors of merchandise are expressly specified, among other trades and callings, as subject to municipal license and regulation. There can be no contention that the terms used in the last cited section also encompass solicitors and canvassers, for all of these categories have distinct and well-understood meanings consistent with the previously recited definitions spelled out in the two Paramus ordinances. (An itinerant vendor, not encompassed within either of these ordinances, is one who establishes himself in business in a store or other fixed location in a community with the intention to remain there for a short period of time only.) 40 *Am. Jur., Peddlers, Transient Dealers and Solicitors,* §§ 2–6, *pp.* 909–912, inclusive.

Plaintiff's point is not well made, for *R. S.* 40:52–1 has an additional purpose beyond an express grant of the police power to regulate and license a long list of various kinds of businesses and persons. This is made evident by the following section, *R. S.* 40:52–2, which provides that "[t]he governing body may fix the fees for all such licenses, *which may be imposed for revenue."* (Emphasis supplied) A New Jersey municipality has no revenue-raising power except as granted by the Legislature. The exaction of license or permit fees *for such purpose* is permissible only in those classifications specified in *R. S.* 40:52–1, and then solely in connection with regulation. *Salomon v. Jersey City,* 12 *N. J.* 379 (1953); *cf. Weiner v. Borough of Stratford,* 15 *N. J.* 295 (1954). What businesses will be included in that category is primarily a matter for legislative determination. No more need be said on this subject now, since it will be further considered in connection with the license fee provision of this ordinance, other than to mention the suggestion of possible purposeful omission of solicitors and canvassers

from *R. S.* 40:52–1 to avoid the question of a license fee for revenue purposes thereunder burdening interstate commerce, since the business of such persons is generally interstate in legal character.

■ Where the police power has been granted to a municipal corporation, it is elementary that it can be exercised only in those areas where regulation is needful for the common good, *i. e.*, public health, safety, morals or general welfare, and then only by reasonable means substantially connected with the public interest designed to be advanced. *Schmidt v. Board of Adjustment of City of Newark,* 9 *N. J.* 405 (1952).

■ There can be no doubt that the business of soliciting and canvassing is a proper subject for regulation under the police power, as is peddling, and has been so considered for generations. The way in which the business is necessarily conducted opens the way for fraud, deceit and dishonest dealing by the unscrupulous, even though by only a minority of those engaged in it, with redress difficult or practically impossible since the solicitor is very frequently a stranger and quickly gone from the locality. Resort may also be easily had to the business by the criminally minded for the purpose of obtaining admittance to private homes in furtherance of some present or future unlawful object. 40 *Am. Jur., ibid.,* § 7, *p.* 912. Courts have universally upheld the amenability of the business to reasonable police regulations. *Town of Irvington v. Schneider,* 120 *N. J. L.* 460 (*Sup. Ct.* 1938), affirmed 121 *N. J. L.* 542 (*E. & A.* 1939), reversed on other grounds *Schneider v. State of New Jersey,* 308 *U. S.* 147, 60 *S. Ct.* 146, 84 *L. Ed.* 155 (1939); *Dziatkiewicz v. Township of Maplewood,* 115 *N. J. L.* 37 (*Sup. Ct.* 1935); 7 *McQuillin, Municipal Corporations* (*3d ed.* 1949), § 24.378; *Rhyne, Municipal Law* (1957), § 26–44; 40 *Am. Jur., ibid.,* § 16, *p.* 921. Registration and licensing are commonly accepted as such reasonable regulatory means since they require identification of the solicitor which will deter the dishonest and aid future loca-

tion of the person if that be necessary. 40 *Am. Jur., ibid.,* § 30, *p.* 938; *Rhyne, ibid.,* § 26–48. *Schneider and Dziatkiewicz* indicate, in line with general authority, that a requirement of disclosure of detailed personal facts, including a photograph and fingerprints and information as to any criminal record, by the applicant will not be struck down as unreasonable in view of the reasons dictating regulation. The power cannot, however, be exercised for "a purpose to shield the local shopkeepers from lawful competition, and thus to serve private interests in contravention of common rights; * * *." *N. J. Good Humor, Inc. v. Board of Com'rs of Borough of Bradley Beach,* 124 *N. J. L.* 162, 171 (*E. & A.* 1939); *Weiner v. Borough of Stratford, supra* (15 *N. J.* at *page* 300); see *Nippert v. City of Richmond,* 327 *U. S.* 416, 434, 66 *S. Ct.* 586, 90 *L. Ed.* 760, 162 *A. L. R.* 844 (1946).

 Local regulations, including licensing, are not to be invalidated or held inapplicable under the Commerce Clause of the Federal Constitution (*Art.* I, *Sec.* 8) merely because the particular soliciting business is interstate. Speaking generally, it is clear that today a police regulation obviously intended as such and not operating unreasonably beyond the occasions of its enactment will be sustained even though it may affect interstate commerce incidentally, so long as it does not unduly burden it. *Nippert v. City of Richmond, supra; Mount Holly Township v. Omar,* 51 *N. J. Super.* 201 (*Cty. Ct.* 1958); *Annotation, "Validity of municipal regulation of solicitation of magazine subscriptions,"* 9 *A. L. R. 2d* 728 (1950); *Annotation,* 162 *A. L. R.* 857; 5 *McQuillin, ibid.,* § 19.72, *p.* 661. Any suggestion to the contrary in *Dimmig v. Mann,* 120 *N. J. L.* 442 (*Sup. Ct.* 1938) does not represent the modern law. Plaintiff conceded at oral argument that, assuming local authority to regulate solicitors and canvassers (which we have found to exist), an ordinance requiring a license for interstate solicitors, to be issued (absent a criminal record) automatically upon the submission of an application containing personal

facts and the like, and even imposing a small fee for investigation of the application, would not be in contravention of the Commerce Clause or an unreasonable exercise of the police power. *Cf. Mount Holly Township v. Omar, supra.*

It may be noted in passing that the Paramus ordinance is not expressly prohibitory of all soliciting and that plaintiff, attacking only certain provisions thereof, does not contend that its many requirements taken as a whole are so oppressive as to amount to practical prohibition. The United States Supreme Court has held in *Breard v. City of Alexandria,* 341 *U. S.* 622, 71 *S. Ct.* 920, 95 *L. Ed.* 1233 (1951), that a municipal ordinance absolutely prohibiting peddlers or canvassers from calling upon occupants of private residences to solicit orders for or sell merchandise without having been requested or invited to do so (the so-called "Green River ordinance") does not violate the Due Process or Commerce Clauses of the Federal Constitution. But *cf. N. J. Good Humor, Inc. v. Board of Com'rs of Borough of Bradley Beach, supra* (124 *N. J. L.* 162), where it was held that a municipality could not, in the exercise of the local police power, ban peddling completely, it being a business lawful in character and not "a nuisance *per se.*"

We proceed to consider more specifically the precise ordinance requirements complained of, separately and as if imposed only by a single municipality, dealing first with the $25 fee to be paid for a six-month license. As has previously been pointed out, this ordinance was enacted under the authority of *R. S.* 40:48-2 and not *R. S.* 40:52-1 and 2, so no license fee may be imposed for revenue purposes. Adoption pursuant to *R. S.* 40:48-2 does not absolutely preclude charging any fee for the license. The power to regulate includes the right to charge a fee designed to defray the costs thereof, but such must not "exceed the bounds of reason considered in connection with the service and the cost of the service granted." *Daniels v. Borough of Point Pleasant,* 23 *N. J.* 357, 361 (1957). If this particular fee

cannot be supported as warranted under state law, the federal question of an undue burden on interstate commerce becomes immaterial.

There is a presumption of the propriety and reasonableness of a license fee fixed by an ordinance, and the burden of proving otherwise rests upon those who attack it. *Gilbert v. Town of Irvington,* 20 *N. J.* 432 (1956); *Bellington v. East Windsor Township,* 17 *N. J.* 558 (1955). Here there was no direct evidence on the question, but as indicated in *Gilbert* (20 *N. J.* at *pages* 437–438), comparison with other license fees imposed may be resorted to. It would appear that the principal municipal expense involved in connection with the enforcement of the ordinance is the added expense of investigating applications, but an initial and separate fee of $5 is imposed specifically for that purpose. There is not even a suggestion by the municipality that enforcement, entrusted to the police department, will require any more policemen or other expense than is now required and spent for all law enforcement in the community. More significant, the license fee is in the same annual amount as that imposed under the peddler ordinance (the fee in the latter includes the charge for investigation since there is no separate impost in that enactment). That ordinance was adopted under *R. S.* 40:52–1 and 2, and so the fee may be imposed for the purpose of raising revenue (as it was expressedly recited so to be), in excess of regulatory costs, at least within reasonable limits. *Salomon v. Jersey City, supra* (12 *N. J.* at *page* 390). We are consequently of the opinion that this $25 fee for a six-month license is excessive and invalid under state law.

Even if this were not so, we believe the imposition would have to be struck down as an improper and undue burden on interstate commerce and so violative of the Federal Constitution. We should first interpolate, however, that an impost denominated as a license fee is not federally invalidated if it amounts to no more than the reasonable cost of regulation warranted under the state police power.

So the initial investigation charge here would be valid under any view. Originally the United States Supreme Court held the view that a license fee in any amount imposed on an interstate solicitor amounted to a state tax on commerce between the states and was automatically bad. *Robbins v. Shelby County Taxing District,* 120 *U. S.* 489, 7 *S. Ct.* 592, 30 *L. Ed.* 694 (1887). This view ultimately came to be modified, principally by the language in *Western Live Stock v. Bureau of Internal Revenue,* 303 *U. S.* 250, 58 *S. Ct.* 546, 82 *L. Ed.* 823 (1937), and *McGoldrick v. Berwind-White Coal Mining Co.,* 309 *U. S.* 33, 60 *S. Ct.* 388, 84 *L. Ed.* 565 (1940), where it was said that it was not the purpose of the Commerce Clause to relieve those engaged in interstate commerce from their just share of the state tax burden, even though such affects their interstate trade, and it was indicated that a state tax, non-discriminatory against interstate commerce, is valid. The present federal law on state or local fees for solicitor's licenses is represented by *Nippert v. City of Richmond, supra* (327 *U. S.* 416, 66 *S. Ct.* 586, 90 *L. Ed.* 760). There the city imposed an initial license tax of $50 per year, plus $1\frac{1}{2}\%$ of the gross earnings from sales in excess of $1,000 based on the previous year's sales, on all persons engaged in soliciting, whether interstate or intrastate. The imposition was held invalid under the Commerce Clause, the court holding that *Robbins* still applied to the fixed sum license fee and that the whole impost in its practical consequences did not apply equally to intrastate and interstate commerce. We see no difference in principle here. The license fee is a fixed sum. The adjustment provision previously quoted does not cure the defect. It contains no formula which would meet the test of *Nippert,* the matter of amount being left to the discretion of the governing body. Moreover the procedure required and the data to be furnished on any claim for relief is so complex, considering the amount involved, as to make it of no practical utility. The $25 license fee is therefore also invalid under the Commerce Clause. *Cf. State v. Kromer,* 34 *N. J. Super.*

465 (*Cty. Ct.* 1955); but *cf. Acuff v. Mueller,* 93 *F. Supp.* 146 (*D. C. Mo.* 1950).

Next to be considered is the provision requiring a $1,000 surety bond. It is obviously designed to assure a source of financial redress to the purchaser in case of fraud by a peripatetic solicitor. Presumably it would be sued on directly by the customer. In such aspects it may be considered as bearing some relation to the object of the entire regulation. But the sum fixed bears no relation to the amount of business done (*cf. Hall of Distributors, Inc. v. Bowers,* 139 *F. Supp.* 400 (*D. C. Ohio* 1956)), and is required of every single solicitor, even where, as here, several are employed by the same company. We are of the opinion that the bond requirement as specified in this ordinance is unduly oppressive and so unreasonable as to the local police power. More important is the fact that, considered only as an isolated requirement of one municipality, it seems unlawfully discriminatory against the interstate solicitor of sales of merchandise. No bond need be posted by one who contracts to perform services in the future, as distinct from taking orders for goods. This species of solicitation is as much open to fraudulent practices as taking orders for goods for future delivery. Furthermore, the provision exempts borough residents unless they represent a firm whose principal place of business is outside the state. Extension of the requirement to residents soliciting for out-of-state businesses points to discrimination against those engaged in business across state lines. This type of requirement in legislation regulating solicitors has had very little attention in the courts. In *Real Silk Hosiery Mills v. City of Portland,* 268 *U. S.* 325, 45 *S. Ct.* 525, 69 *L. Ed.* 982 (1925), such an ordinance with a fixed sum license fee and requiring a $500 bond was stricken down *in toto* as a real interference with the free flow of interstate commerce, without specific discussion of the bond requisite. Motor vehicle transportation agents were required to be licensed by state law in California. The state-wide license fee was $1 and a $1,000

bond was required. The legislation was held to be free from Commerce Clause violation in *State of California v. Thompson,* 313 *U. S.* 109, 61 *S. Ct.* 930, 85 *L. Ed.* 1219 (1941), again without any particular mention of the bond. Since only one bond was necessary to solicit transportation contracts anywhere in the state, oppression and expense were avoided. We will shortly comment more fully on this aspect. In our opinion, the bond provision is invalid under the Commerce Clause.

The third ordinance provision objected to by plaintiff is that compelling a license applicant to submit a statement of freedom from disease made by a "reputable physician" of the *county* within ten days of the application. This introduces into the ordinance a theory quite different from the basic object of protecting against fraud and the like. This municipality does not require local artisans or other persons (beyond solicitors and peddlers), who might normally enter a home in the borough to perform services or deliver goods, to have certification of freedom from disease, except those handling food (under a customary board of health regulation). There is no sound reason to suppose a solicitor would be any more diseased than such others. On its face the requirement in this kind of an ordinance has all the earmarks of a purpose to discourage the canvassing business rather than actually to safeguard public health. Moreover, the requisite that the statement can only be made by a physician of the county is unreasonable, for all doctors in the State are licensed to practice throughout the State by the same statewide authority. *R. S.* 45:9–6 and 15. We conclude that the provision is invalid as an arbitrary and unreasonable exercise of the police power. By the same token, as applied to interstate solicitors, it also unduly burdens interstate commerce.

It is also important to note a broader aspect of the burden on interstate commerce from the provisions complained of. This arises from the fact that Paramus is not the only municipality with an ordinance regulating solicitors.

It is common knowledge that local legislation of this general type, varying in its details, is found in a very great number of New Jersey communities. By the very nature of their business and the kinds of goods and services customarily offered, canvassers generally call on prospective customers only at rather widely spaced intervals and they must work in many municipalities, a few days at a time in each (unless it be a very large city), over the course of a year in order to make a living. Just complying with ordinance provisions as comprehensive and detailed as those of Paramus in every town will quickly consume a great amount of time and money, with correspondingly less time to do business and a smaller return from it. The cumulative effect in actual practice imposes a substantial burden on interstate commerce and furnishes an added reason, as pointed out by the trial judge here, for holding the provisions in question to be invalid.

This concept forms the rationale of the decision in *Nippert* striking down Richmond's license fee on solicitors. Justice Rutledge there said:

"But the cumulative effect, practically speaking, of flat municipal taxes laid in succession upon the itinerant merchant as he passes from town to town is obviously greater than that of any tax of state-wide application likely to be laid by the legislature itself. And it is almost as obvious that the cumulative burden will be felt more strongly by the out-of-state itinerant than by the one who confines his movement within the state or the salesman who operates within a single community or only a few. The drummer or salesman whose business requires him to move from place to place, exhausting his market at each periodic visit or conducting his business in more sporadic fashion with reference to particular localities, would find the cumulative burden of the Richmond type of tax eating away all possible return from his selling. A day here, a day there, five days now and five days a year or several months later, with a flat license tax annually imposed lacking any proportion to the number or length of visits or the volume of the business or return can only mean the stoppage of a large amount of commerce which would be carried on either in the absence of the tax or under the incidence of one taking account of these variations.

These effects, not present in the Berwind-White type of tax, are inherent in the Richmond type in relation to a wide variety of

selling activities. They are not only prohibitive in an absolute sense, for many applications. They are discriminatory in favor of the local merchant as against the out-of-state one." (327 *U. S.* at *pages* 429–431)

See also *State v. Kromer, supra* (34 *N. J. Super.* at *pages* 468–469).

The same thought is also cogently expressed by Justice Jackson in his concurring opinion in *Duckworth v. State of Arkansas*, 314 *U. S.* 390, 62 *S. Ct.* 311, 86 *L. Ed.* 294 (1941):

"Our national free intercourse is never in danger of being suddenly stifled by dramatic and sweeping acts of restraint. That would produce its own antidote. Our danger, as the forefathers well knew, is from the aggregate strangling effect of a multiplicity of individually petty and diverse and local regulations. Each may serve some local purpose worthy enough by itself. Congress may very properly take into consideration local policies and dangers when it exercises its power under the commerce clause. But to let each locality conjure up its own dangers and be the judge of the remedial restraints to be clamped onto interstate trade inevitably retards our national economy and disintegrates our national society. It is the movement and exchange of goods that sustain living standards, both of him who produces and of him who consumes. This vital national interest in free commerce among the states must not be jeopardized." (314 *U. S.* at *page* 401, 62 *S. Ct.* at *page* 316)

As also pointed out in *Nippert,* "the state is free to allow its municipal subdivisions to erect such barriers against each other, to some extent, as to the commerce over which the state has exclusive control. It cannot so outlaw or burden the commerce of the United States." (327 *U. S.* at *page* 435, 66 *S. Ct.* at *page* 595). *Cf. Borough of Cresskill v. Borough of Dumont,* 15 *N. J.* 238 (1954).

The last issue posed is the claim of invalidity of the delegation to the chief of police to approve or disapprove license applications for lack of adequate standards in the ordinance to guide his determination. The trial court found there were none. The question is a close one. We refer again to the provisions of the ordinance. It requires that the chief cause such investigation to be made of the

applicant's "business and moral character &ast; &ast; &ast; as he deems necessary for the protection of the public good." The application must include fingerprints, a statement setting forth any conviction for any crime or offense and two references as to character and business responsibility or evidence from which the same could be evaluated. (Plaintiff does not object to furnishing such information.) The delegation is to determine "character and business responsibility," and the only criterion of approval mentioned is that both must be found "satisfactory."

The principles underlying the question are well settled. The problem is to apply them in the particular case. Most fundamental is the rule that where discretionary power to grant or deny a license is reposed in an administrative official or body by a regulatory ordinance, adequate standards to guide the discretion must be found in or inferable from the ordinance or the provision is void. *Weiner v. Borough of Stratford, supra* (15 *N. J.* 295). The whole ordinance may be looked to in the light of its surroundings and objectives for the purpose of deciding whether there are standards and if they are sufficient. *In re Berardi*, 23 *N. J.* 485, 491 (1957). They need not be minutely detailed. *Ward v. Scott*, 11 *N. J.* 117 (1952). As Justice Jacobs there pointed out, "the exigencies of modern government have increasingly dictated the use of general rather than minutely detailed standards in regulatory enactments under the police power" (11 *N. J.* at *page* 123), citing many examples from our statutes and reported cases. Much must necessarily depend on the nature of the determination involved and the official or body to whom the power is delegated. A standard will not be deemed inadequate simply because the discretion might be abused. Arbitrary action by the official will not be anticipated.

We ought to say that we find no legal obstacle to an ordinance enactment making the issuance of a canvasser's license discretionary (governed by sufficient standards) rather than automatic. Denial does not have to rest entirely on a

criminal record for other important facts may well enter into the propriety of issuance to a particular individual in the light of the evil sought to be guarded against by the regulation.

We believe the norm of "satisfactory" as to an applicant's "character and business responsibility" is minimally sufficient. It is difficult to be much more specific in situations like this one. The police chief can, of course, reach his conclusion only on objective facts and not by mere whim. Considering the whole ordinance and its purpose, we conceive that, unless the application or the investigation discloses something tangible by way of a conviction for a crime involving moral turpitude, prior violations of canvassing ordinances, a determination of previous fraudulent acts or conduct, a record of continual breaches of solicited contracts, concrete evidence of bad character, or the like, the applicant must be found to be satisfactory.

We conclude, as did the trial court in its judgment, that the $25 license fee and the bond and medical certificate provisions of the ordinance constitute unreasonable burdens on interstate commerce, and so are invalid as applied to plaintiff and his salesmen, but that the provisions are also invalid under the police power. We further determine, contrary to the judgment below, that the standards controlling the exercise of the delegation to the chief of police are legally sufficient.

As so modified, the judgment is affirmed without costs.

*For modification*—Chief Justice WEINTRAUB, and Justices BURLING, JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—7.

*Opposed*—None.