75 N.J. Super. 90 (1962)
182 A.2d 175
STATE OF NEW JERSEY (BOROUGH OF SOUTH PLAINFIELD), PLAINTIFF-RESPONDENT,
v.
JOSEPH MAUER, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Middlesex County Court, Law Division.
Decided June 6, 1962.
*91 Mr. George J. Lasky, for defendant-appellant (Messrs. Green & Lasky, attorneys).
Mr. Harman R. Clark, Jr., attorney for plaintiff-respondent.
*92 CONVERY, J.C.C.
Defendant prosecuted this appeal from a conviction in the South Plainfield Municipal Court of the violation of an ordinance entitled, "An Ordinance to Regulate and Prohibit Persons from Canvassing, Soliciting or Peddling from House to House or on the Streets and Regulating the Distribution of Circulars Pamphlets and Other Forms of Advertising throughout the Borough of South Plainfield."
Defendant Joseph Mauer is the district manager of Family Record Plan Inc., a California corporation engaged in the sale of photograph albums. He and his six subordinates cover a territory comprising Monmouth, Mercer, Somerset, Hunterdon, Union and Middlesex counties. South Plainfield is situated in the last mentioned county. His California employer furnished him with birth lists, and calls were made upon those whose names appeared thereon. From these individuals defendant obtained the names of others who might be interested in the purchase of an album and called on them. It does not appear that any appointments were ever made with prospective purchasers, but rather that defendant arrived unannounced and uninvited. He carried with him a sample album, but no sale was made of it. Instead, a purchase order was executed by the customer and this was forwarded by defendant to the California corporation for acceptance. Once accepted, the album was shipped directly to the customer from outside New Jersey. Installment payments were made by the customer directly to the California corporation and defendant had no further dealings with the former.
In the course of his business defendant called on 10 to 12 customers a day, who resided in as many as five to six different municipalities. During any calendar year calls were made in 100 municipalities; in some quite frequently, while in others only once.
The South Plainfield ordinance provides that "it shall be unlawful for any * * * solicitor * * * to take orders for any goods * * * within the Borough of *93 South Plainfield without first obtaining a license therefor." In order to procure the prescribed license it is necessary to apply in writing to the borough's chief of police on an application blank furnished by the latter and which requires the following information:
"The name and address of the person making such application, his date and place of birth, height, weight, color, marital status, length of present residence, previous criminal record, general description of clothing worn, name and address of employer, description of the product for which applicant is canvassing, copy of any and all contracts, agreements and other paper writings to be signed by the persons to be approached by the canvasser, certified to be true by the applicant's employer. Each applicant shall be fingerprinted before the permit is issued."
This application form, when completed, is submitted to the chief of police, upon whom falls the obligation of investigating the statements made therein. This inquiry is to consume no more than three days, and upon its completion the police chief indicates his approval or disapproval on the application. If approved, the applying solicitor must take the application to the borough treasurer, pay a $5 fee (which has been determined to be the reasonable cost of investigating the character and record of the solicitor), and obtain acknowledgment of that payment on the application from the treasurer. The applicant is then to return the completed form to the chief of police, who issues the license, together with "a badge about three inches in diameter numbered and bearing the name of the Borough and the word `solicitor'" for which a deposit of $1 is paid as security for its return. The licensee must wear this badge "conspicuously upon his person at all times." The license expires on December 31 of each year, and a fine or prison term is prescribed for the violation of the ordinance's provisions.
Without having either applied for or having received a license to solicit, defendant carried on his business in South Plainfield, was brought before its municipal court for an *94 alleged violation of the ordinance set forth above, convicted thereunder, and fined $10 plus court costs. It is from that proceeding that defendant prosecutes this appeal.
Defendant contends that he is not a solicitor within the definition of the ordinance and thus not subject to its terms; that the ordinance was passed for revenue purposes pursuant to N.J.S.A. 40:52-1 and 2 and hence inapplicable to his interstate activities; that if applicable to him, the ordinance imposes an undue burden on interstate commerce, contrary to the United States Constitution, Art. I, sec. 8; and that the ordinance is invalid under state law by reason of the lack of adequate standards to guide the chief of police in his determination.

I.

WHETHER DEFENDANT IS SOLICITOR WITHIN MEANING OF THE ORDINANCE.
By definition, "The word solicitor within the meaning of this ordinance is a person who goes from house to house selling or buying goods, wares or merchandise by sample or taking orders for future delivery or selling a service to be rendered in the future with or without accepting an advance payment for the goods, wares, merchandise or service."
Defendant has urged that since he does not go "from house to house" as would an ordinary canvasser, but rather guides himself by the birth lists supplied by his employer or the referrals obtained from other customers, he is not a solicitor within the intendment of the definition. This narrow interpretation of the activity sought to be regulated by the municipality is at odds with traditional conceptions of solicitation, and inconsistent with the declared purpose of the ordinance. A solicitor has long been held to be one who is engaged or employed for the purpose of importuning or entreating for the purchase of goods. The essence of his activity which is of concern to the local government *95 arises out of the lack of invitation by or appointment with the customer. Thus, the unknown solicitor has been held in disfavor because of his annoying methods of solicitation, financial irresponsibility growing out of his impermanent and temporary habits, and his propensity to defraud in the sale of his goods and to commit crimes collateral to his admittance to private homes.
The declared purpose of this ordinance is the prevention of crime and dishonest business practices. Whether a solicitor calls on every house within a particular locality or goes only to those noted on the supplied list, would seem of little relevance when considered in the light of the mischief sought to be remedied by the legislative enactment. In either alternative the solicitor is unknown, uninvited and, quite possibly, unwanted. Within the framework of these considerations I find that defendant is a solicitor within the meaning of the South Plainfield ordinance. 40 Am. Jur., Peddlers, Transient Dealers and Solicitors, secs. 2-7, pp. 909-912, inclusive; 81 C.J.S. Solicitors, p. 389; Moyant v. Paramus, 30 N.J. 528 (1959).

II.

APPLICATION OF ORDINANCE AS VIOLATIVE OF THE UNITED STATES CONSTITUTION, ART. I, SEC. 8.
That an employee of a California corporation soliciting orders in New Jersey to be accepted and filled from out of the State is engaged in interstate commerce is so plain as to require no comment beyond the citation of a few fundamental authorities. Nippert v. Richmond, 327 U.S. 416, 66 S.Ct. 586, 90 L.Ed. 760 (1946); State v. Kromer, 34 N.J. Super. 465 (Cty. Ct. 1955); Moyant v. Paramus, supra.
Defendant has contended that the ordinance was passed pursuant to N.J.S.A. 40:52-1 and 2 and thus cannot be held to be applicable to interstate commerce. As *96 to this proposition, suffice it to say that the ordinance is directly to the contrary. It specifically provides that the fee exacted is not for revenue purposes but rather to defray the expense of investigation. R.S. 40:48-2 is the express grant in our statutes of broad and general police powers to municipalities. It seems clear that South Plainfield was acting pursuant to this authority in enacting the ordinance. A fee designed to defray the costs of an investigation is valid so long as it does not "exceed the bounds of reason considered in connection with the service and the cost of service granted." Daniels v. Borough of Point Pleasant, 23 N.J. 357, 361 (1957); Moyant v. Paramus, supra. Here the $5 fee as measured against the investigation to be performed is clearly a reasonable amount.
The next problem, and indeed the crux of the controversy, is whether or not the licensing provisions of the municipal ordinance impose an undue burden on interstate commerce. It is clear that the soliciting activity serves to form a sufficient connection between the commerce and the municipality so that due process requirements are satisfied. McGoldrick v. Berwind-White Coal Min. Co., 309 U.S. 33, 60 S.Ct. 388, 84 L.Ed. 565 (1940), but whether or not the local incident related to or affecting commerce may be made the subject of municipal regulation "depends upon other considerations of constitutional policy having reference to the substantial effects, actual or potential, of the particular [regulation] in suppressing or burdening unduly the commerce." Nippert v. Richmond, supra, 327 U.S., at p. 424, 66 S.Ct., at p. 590. Local licensing regulations are not to be held invalid under the Commerce Clause of the Federal Constitution merely because the particular soliciting business is interstate.
"Speaking generally, it is clear that today a police regulation obviously intended as such and not operating unreasonably beyond the occasions of its enactment will be sustained even though it may affect interstate commerce incidentally, so long as it does not unduly burden it." Moyant v. Paramus, supra.
*97 Although the ordinance under consideration here is more burdensome upon the solicitor than that in Mount Holly Tp. v. Omar, 51 N.J. Super. 201 (Cty. Ct. 1958), compliance with its provisions does not represent the obstacle found in the Paramus case. In Mount Holly the permit could be obtained by the applicant after giving his name, photographs of his face, other identifying matter, and the sum of 75 cents to cover the cost of registration. The permit would automatically issue, since as the chief of police had no discretion. These regulations were found not to burden interstate commerce. In Paramus the ordinance required a sworn written application setting forth various personal and business data; a photograph of the applicant; his fingerprints; names of two reliable property owners of the county who would certify to applicant's good character and business responsibility; a statement as to whether or not applicant had been convicted of a crime, misdemeanor or violation of any municipal ordinance; and a statement by a reputable county physician, dated within 10 days of the application, certifying that the applicant was free from contagious infections or communicable disease. The chief of police was to conduct an investigation of the applicant to determine his suitability for a license. A $5 fee was imposed to cover the expense of this inquiry, and the license fee exacted was $25 for a six-month period. Furthermore, all nonresidents were required to furnish a bond in the sum of $1,000, generally guaranteeing the applicant's faithful performance of his business obligations arising out of his soliciting activity. These provisions were held by the court to impose an undue burden on interstate commerce. Compliance with South Plainfield's ordinance is clearly not so vexatious.
Here there is no discrimination as between residents and nonresidents, and all the information required is not only within the personal knowledge of the applicant but is also reasonably necessary to form an adequate basis upon which the chief of police might formulate his judgment.
*98 However, it is essential to note a broader aspect of the burden on interstate commerce from the provisions complained of. It is common knowledge that South Plainfield is not the only municipality with legislation of this nature. Moyant v. Paramus, supra. As noted above, in the course of defendant's business he solicits in five to six different municipalities each day, and in 100 a year. Simply complying with ordinance provisions, such as are involved here, and particularly the possible three-day waiting period, is easily seen to have the potential of consuming a great amount of time which might otherwise be spent in conducting his business. The cumulative effect of such local legislation in actual practice will impose a real burden on interstate commerce, and for that reason is inapplicable to it. Cf. State v. Kromer, supra. This very concept formed the rationale of the Nippert v. Richmond decision, wherein Justice Rutledge said:
"But the cumulative effect, practically speaking, of flat municipal taxes laid in succession upon the itinerant merchant as he passes from town to town is obviously greater than that of any tax of state-wide application likely to be laid by the legislature itself. And it is almost as obvious that the cumulative burden will be felt more strongly by the out-of-state itinerant than by the one who confines his movement within the state or the salesman who operates within a single community or only a few. The drummer or salesman whose business requires him to move from place to place, exhausting his market at each periodic visit or conducting his business in more sporadic fashion with reference to particular localities, would find the cumulative burden of the Richmond type of tax eating away all possible return from his selling. A day here, a day there, five days now and five days a year or several months later, with a flat license tax annually imposed lacking any proportion to the number or length of visits or the volume of the business or return can only mean the stoppage of a large amount of commerce which would be carried on either in the absence of the tax or under the incidence of one taking account of these variations.
These effects, not present in the Berwind-White type of tax, are inherent in the Richmond type in relation to a wide variety of selling activities. They are not only prohibitive in an absolute sense, for many applications. They are discriminatory in favor of the local merchant as against the out-of-state one." (327 U.S., at pages 429-431, 66 S.Ct., at page 592.)
*99 I conclude that the ordinance in question is inapplicable to those engaged in interstate commerce and places an undue burden on the defendant. The judgment of the municipal court below is reversed and the defendant is adjudged not guilty.