92 N.J. Super. 347 (1966)
223 A.2d 498
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ARTHUR IMPERATORE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 10, 1966.
Decided October 17, 1966.
*349 Before Judges GOLDMANN, KILKENNY and LEWIS.
Mr. James A. Major II argued the cause for appellant (Messrs. Major & Major, attorneys).
Mr. Jeffrey R. Lowe, Law Assistant, argued the cause for respondent (Mr. Arthur J. Sills, Attorney General, attorney).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Defendant was convicted in the Bergen County District Court for violating N.J.S.A. 27:23-29 and Regulation 2(C) of the New Jersey Turnpike Authority (Authority), in that he drove at 60 M.P.H. on the Turnpike where posted signs read "Construction Area  Speed Limit 45 Miles Per Hour." He appealed to the Bergen County Court where, after a trial de novo, the judge found *350 him guilty as charged and imposed a fine of $30 plus $5 costs and revoked his driver's license for 30 days. The sentence was stayed pending the outcome of defendant's appeal to this court. The matter is presented to us on an agreed statement in lieu of record, pursuant to R.R. 1:6-2.
Regulation 2(C), part of the Authority's "Regulations Relating to the Control of Traffic on the New Jersey Turnpike," provides:
"Where appropriate signs prescribing a lesser speed are posted or erected by a person or persons authorized by the New Jersey Turnpike Authority to post or erect such signs, no vehicle within the area or zone or section where such signs are posted or erected shall be operated in excess of the speed prescribed by said signs. All vehicles consistent with the requirements of this Section shall be operated at an appropriate reduced speed when specific hazards exist with respect to traffic, road, weather or other conditions."
Defendant launches a double attack upon this regulation, arguing that (1) the Authority may not constitutionally delegate to others its power to designate speed limits, and (2) assuming a lawful delegation, the rule does not prescribe adequate standards governing the exercise of the power thus delegated.
N.J.S.A. 27:23-5, containing the Legislature's general grant of powers to the Authority, authorizes the Authority to "establish rules and regulations for the use of any [Turnpike] project" (subsection (h)) and to "do all acts and things necessary and convenient to carry out the powers expressly granted" in the New Jersey Turnpike Authority Act, L. 1948, c. 454, N.J.S.A. 27:23-1 et seq. (subsection (o)).
N.J.S.A. 27:23-19 directs that the act, being necessary for the welfare of the State and its inhabitants, shall be liberally construed to effect its purposes.
N.J.S.A. 27:23-29 provides that all persons operating vehicles upon any Turnpike project must at all times comply with any and all regulations adopted by the Authority "to control traffic and prohibit acts hazardous in their nature or tending to impede or block the normal and reasonable flow of *351 traffic." However, prior to adopting any regulation the Authority "shall investigate and consider the need for and desirability of such regulation for the safety of persons and property, * * * and the contribution which any such regulation would make toward the efficient and safe handling of traffic and use of such turnpike project, and shall determine that such regulation is necessary or desirable to accomplish such purposes or one or more of them, * * *."
Pursuant to the powers so delegated to it, the Authority adopted Regulation 2, among others. Parts (A) and (B) respectively establish 50 and 60 M.P.H. speed limits, and part (C), quoted above, authorizes the posting of signs to warn of a speed limit reduction when hazards exist.
Defendant does not question that Regulation 2(C) was adopted in accordance with the procedure prescribed by N.J.S.A. 27:23-29. Nor does he question that the 45 M.P.H. sign was erected in a construction area by a person or persons duly authorized by the Authority to do so. He admitted that he saw the sign and also, just prior thereto, one designating a 35 M.P.H. speed limit. His excuse was that he was merely following the general flow of traffic.
Defendant concedes that it is unquestionably within the orbit of the Authority's statutory power to designate speed limits on the Turnpike, but points out that it has never, by regulation, designated any speed other than 50 or 60 M.P.H. He contends that the Legislature never authorized the Authority, either expressly or by implication, to redelegate to authorized persons its power to designate speed limits. In short, Regulation 2(C) amounts to an unlawful redelegation of legislative power to individuals unknown.
The question here posed for resolution is simply whether the power to subdelegate may fairly be implied from the statute as a whole. Professor Davis has noted that "the push toward more subdelegation is strong and firm. It comes from Congress, from the courts, from the agencies, and from bar groups." 1 Davis, Administrative Law Treatise, § 9.07 (1963 p.p.). As government grows more complex, legislatures give *352 administrative agencies more responsibility for implementing statutes. Our courts have responded by recognizing and giving effect to such a legislative intent wherever possible. Thus, in R.H. Macy & Co., Inc. v. Director, Division of Taxation, 77 N.J. Super. 155 (App. Div. 1962), affirmed per curiam 41 N.J. 3 (1963), the court upheld the Director's subdelegation to the Corporate Tax Bureau in the Division of Taxation of his power to redetermine an assessment. The court said:
"It is unquestionably sound law that, generally speaking, a delegated power cannot be further delegated, * * * but implicit in the rule is the qualification that there is no indication that the Legislature intends otherwise. The rule is essentially one of presumption of intent in statutory construction. * * *
* * * Examination of all legislation in pari materia affords light on the question as to what it might reasonably be supposed the Legislature intended the Director might do in the administration of his responsibilities through agents rather than solely in propria persona." (77 N.J. Super., at pages 174-175)
And see Wagner v. Mayor, etc., of Newark, 42 N.J. Super. 193, 213-214 (Law Div. 1956), reversed on other grounds, 24 N.J. 467 (1957), where Judge (now Chief Justice) Weintraub recognized that, absent a legislative expression or circumstances cogently evidencing an intent that the governing body itself exercise the total power delegated to it, the Legislature impliedly permits subdelegation of powers to agents in close touch with the problem and its specific demands.
Counsel for defendant readily concedes the obvious fact that speed limits on a major highway like the Turnpike must be flexible. In our view, no general reduced speed limits  such as the 25, 35 or 45 m.p.h. limits which defendant suggests could be adopted and posted  can safely and effectively be applied where, in the language of Regulation 2(C), "specific hazards exist with respect to traffic, road, weather or other conditions." The regulation recognizes the hard fact that these special conditions are by nature emergent and transient. Often they arise suddenly, as in the case of a fast-drifting *353 fog or an icy road. It would be impossible for the Authority, by regulation or resolution, to meet these specific and varied hazards as they arise.
The Authority's implied power to delegate the ever-increasing problem of traffic control on the Turnpike is found by a reading of the enabling statute as a whole (N.J.S.A. 27:23-1 et seq., with its internal references to Title 39 of the Revised Statutes, the Motor Vehicle Traffic Act), a consideration of the nature of the Authority itself, and the uniqueness of the subject matter to be regulated. Explicit and implicit throughout the entire range of the applicable legislation are the safety and security of people and property. See, e.g., N.J.S.A. 27:23-26, 27. This vital goal can only be realized if the Authority may act through authorized agents. That it may do so is made clear by the provisions of N.J.S.A. 27:23-28, which reads:
"All persons operating vehicles upon any such Turnpike project must at all times comply with any lawful order, signal or direction by voice or hand of any police officer engaged in the direction of traffic upon such project. When traffic is controlled by traffic lights, signs or by mechanical or electrical signals, such lights, signs and signals shall be obeyed unless a police officer directs otherwise."
The Legislature has in this section recognized that under certain circumstances traffic control must vary according to the conditions present, and this is best accomplished by on-the-spot regulation rather than by general rules prospectively formulated.
The grant of an express power is always attended by such incidental authority as is fairly and reasonably necessary or appropriate to make it effective. Cammarata v. Essex Park Comm'n, 26 N.J. 404, 411 (1958). If there is a reasonable basis to imply the power to subdelegate authority, such an implication may legally be made. Viewing the entire scheme for the control of traffic on the Turnpike, it is reasonably inferable that the Legislature intended the Authority to retain flexibility of regulation. N.J.S.A. 27:23-28, *354 above, is a recognition of the common sense of the matter, namely, that effective traffic control demands that traffic be controlled by authorized persons who are at the scene and who can ascertain what any given set of conditions may require.
The reasons for the rule against subdelegation  fear of arbitrary or discriminatory action  are clearly outweighed by the need for responsive and responsible agency action, especially where the public is protected by adequate warning signs and there is opportunity for judicial review in the case of a person charged with a violation. In short, the uniqueness of the conditions which may require a change of speed limit, and hence demand that an authorized subdelegatee handle the matter, compels the finding of an implied power to subdelegate.
Defendant's second point is addressed to the lack of adequate standards to govern the exercise of the power delegated under Regulation 2(C). Although courts have in the past construed this matter of standards rather strictly in passing upon the question of a delegation of power, 1 Davis, above, § 2.07 et seq., the modern and preferred approach favors flexibility and liberality in assessing standards, while at the same time calling for close judicial supervision over the fairness of adjudicative procedures. Esso Standard Oil Co. v. Holderman, 75 N.J. Super. 455, 474 (App. Div. 1962), affirmed o.b. 39 N.J. 355 (1963), appeal dismissed sub nom. Humble Oil & Refining Co. v. Male, 375 U.S. 43, 84 S.Ct. 148, 11 L.Ed.2d 107 (1963). Abuse of discretion will not be anticipated, Moyant v. Paramus, 30 N.J. 528, 553 (1959).
The four corners of the statute will be examined to find the policies and objectives which are to guide the agency and hence to circumscribe its discretion. In re Bernaducci, 85 N.J. Super. 152, 155 (App. Div. 1964), certification denied 44 N.J. 402 (1965); Esso Standard Oil Co. v. Holderman, above, at pages 474-475; Moyant v. Paramus, above, at page 553; Cammarata v. Essex Park Comm'n, above, at pages 410-411. As was said in Lane v. Holderman, 23 N.J. 304, 316 *355 (1957), "The context of the act and its embedded objectives may be considered in determining whether or not the administrator's discretion is constitutionally circumscribed."
In discussing the sufficiency of standards, the court in Moyant stated that standards need not always be explicit; the entire enactment, viewed in the light of its surroundings and objectives, may be looked to for the purpose of deciding whether there are standards and if they suffice. Much must necessarily depend on the nature of the determination involved and the official or body to whom the power is delegated. 30 N.J., at page 553.
In our view, the statute, N.J.S.A. 27:23-29, and Regulation 2(C) provide sufficient guides for authorized personnel to post signs calling for a reduced speed. The statute (as has already been noted) speaks of regulations "to control traffic and prohibit acts hazardous in their nature or tending to impede or block the normal and reasonable flow of traffic." And the regulation refers to reduced speeds "when specific hazards exist with respect to traffic, road, weather or other conditions." A more specific standard cannot be asked for in the circumstances. The Authority, in all cases under the regulation, acts through an authorized person or persons, and it must be assumed that they will act in good faith and in the proper exercise of discretion, consistent with the special condition or conditions to be met.
The judgment is affirmed.