## CRANE v. DISTRICT OF COLUMBIA.

(Court of Appeals of District of Columbia. Submitted January 2, 1922. Decided May 7, 1923.)

No. 3874.

1. **Constitutional law ⬅63(2)—Congress can give municipalities power to legislate.**

   Notwithstanding Const. art. 1, § 8, gives the exclusive right to legislate for the District of Columbia to Congress, Congress had the power to vest the municipalities in the District and the District itself with authority to legislate, as it has done in the past.

2. **District of Columbia ⬅22—Prohibition of use of streets for private purposes applied only to permanent obstructions.**

   The prohibition of the use of open spaces, public grounds, and streets for private purposes by Act May 17, 1848, § 13, by Act April 6, 1870, and by an ordinance adopted in 1856, applied only to permanent obstructions or occupancy of the public places of streets, and did not prohibit the temporary use thereof.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**3. District of Columbia ⬤⟹22—Commissioners have no authority to prohibit street sales.**

Act Jan. 26, 1887, authorizing the commissioners of the District of Columbia to make reasonable police regulations to locate places 'where licensed vendors shall stand, and governing their conduct upon the streets in relation to such business, did not empower the commissioners to prohibit street sales by either licensed or unlicensed vendors.

**4. District of Columbia ⬤⟹22—Regulation prohibiting street sales of articles not dangerous is unauthorized.**

Joint Resolution Feb. 26, 1892, limiting the power of the commissioners of the District of Columbia to such reasonable and usual police regulations as they may deem necessary for the protection of the lives, limbs, health, comfort, and quiet of persons within the District, did not empower the commissioners to make a regulation prohibiting sales of articles by vendors on streets and public places, unless the articles themselves would endanger, disturb, annoy, or incommode the public.

Smyth, Chief Justice, dissenting.

Writ of Error to the Police Court of the District of Columbia.

Francis S. Crane was convicted of violating the regulation of the Commissioners of the District, and he brings error. Reversed.

P. B. Morehouse, of Washington, D. C., for plaintiff in error.

F. H. Stephens and Francis Madigan, both of Washington, D. C., for defendant in error.

Before SMYTH, Chief Justice, ROBB, Associate Justice, and SMITH, Judge of United States Court of Customs Appeals.

SMITH, Acting Associate Justice. On the 7th of June, 1922, plaintiff in error offered for sale and sold on the streets of Washington, D. C., a paper-bound booklet known as the "Historical Self-Guide of Washington." Prior to the offering for sale and the selling of the booklet, plaintiff in error applied to the superintendent of licenses of the District for a license to make sales on the streets and public spaces and tendered ample money to pay for the license tax. The superintendent refused to issue a license, upon the ground that there was no law of Congress authorizing or permitting a license to sell books on any of the public spaces of the District. Plaintiff then requested permission to sell the booklet on the public streets and that request was denied.

Notwithstanding that he had no license or permission to sell, the plaintiff in error offered the "Historical Self Guide" for sale and sold it while on a public street or space, whereupon he was arrested and charged by information with the violation of a police regulation of the District, which was adopted by the Commissioners on the 27th of March, 1922, and which reads as follows:

"Sec. 7. * * * Except as otherwise provided in these regulations, no person shall sell, or offer for sale any merchandise, article, or thing whatever, from or upon any public space."

Plaintiff in error was found guilty as charged, and was sentenced to pay a fine of $10, and in default of payment thereof to be committed to jail for the period of 10 days. To the sentence and judgment exception was taken, and the writ before us was sued out to

⬤⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

correct errors in the proceedings and to secure the doing of that which of right ought to be done according to law.

But one question is raised by the writ, and that is: Had the commissioners of the District of Columbia the power to enact and promulgate a regulation which forbade the selling or offering for sale by unlicensed venders of any merchandise or thing whatever from or upon any public space.

[1] Under section 8 of article 1 of the Constitution, the exclusive right to legislate for the District of Columbia was reserved to Congress. Congress, nevertheless, had the power to vest and did vest the municipalities of Georgetown and Washington and the District of Columbia with authority to legislate. Welch v. Cook, 97 U. S. 541, 542, 24 L. Ed. 1112; sections 8 and 12, Act March 3, 1805 (2 Stat. 332, 334); sections 2, 6, and 7 of Act May 3, 1802 (2 Stat. 196); section 6, Act May 4, 1812 (2 Stat. 725); section 2, Act May 17, 1848 (9 Stat. 223); section 5 and 18 of Act Feb. 21, 1871 (16 Stat. 419, 424).

The Act of February 21, 1871, constituted the District of Columbia a body corporate for municipal purposes, and provided for a legislative assembly, which was clothed with full power to legislate. The act, however, expressly reserved to Congress the right to repeal or modify all legislation passed by the assembly and to legislate for the District as fully as if no legislative authority had been granted. Section 8 of article 1 of the Constitution; section 18 of the Act of 1871 (16 Stat. 423).

[2] By the Act of June 20, 1874, the legislative assembly was abolished and all power to legislate for the District was returned to Congress (18 Stat. 1160). At that time two congressional enactments, section 13 of the Act of May 17, 1848, and the Act of April 6, 1870, and two municipal ordinances, one passed in 1856 and the other in 1862, stood on the books as law governing the occupancy by private persons of the streets, open spaces, public grounds, and reservations of Washington. 9 Stat. 229; 16 Stat. 82; District v. Monroe, 1 MacArthur & M. (D. C.) 349. Section 13 of the Act of 1848, the Act of April 6, 1870, and the ordinances of 1856 and 1862, are as follows:

Section 13: "No open space, public reservation, or other public ground in the said city, shall be occupied by any private person, or for any private purposes whatever."

Act of 1870: " * * * And provided further that nothing in this act shall authorize the occupancy of any portion of the public streets or avenues for private purposes."

Ordinance of 1856: "It shall not be lawful for any person or persons to place or cause to be placed, or allow to remain, any goods, wares or merchandise, or any sign, box, barrel or other obstruction on either the foot way of any street or avenue further than 4 feet from the building line. * * *"

Ordinance of 1862: "No open space, public reservation, street, or any public ground in this city, shall be occupied by any private person, or for any private purpose whatever, under a penalty of not more than fifty dollars nor less than twenty-five dollars per day for every day or part of a day any such place shall be so occupied."

In September, 1881, section 13 and the ordinances just quoted were construed by the courts and were held to prohibit anything in the nature of a permanent obstruction or occupancy. The temporary use

however of the sidewalks by business men in the transaction of their legitimate business for the display of their goods and wares was judicially determined not to be within the inhibition of the statute or of the ordinances. District v. Monroe, 1 MacArthur & M. (D. C.) 348, 350, 351, 352.

In November, 1896, the Court of Appeals for the District decided that inasmuch as Congress had legislated on the subject by the Act of June 12, 1858, the ordinance of 1862 was void as to streets and avenues improved in whole or in part by the United States. 11 Stat. 319–326; District v. Libbey, 9 App. D. C. 321–330.

So far as we have been able to discover the judicial interpretation of the quoted statutes and ordinances was not met either by congressional or municipal legislation and until the passage of the Act of January 26, 1887 (24 Stat. 368), no attempt was made either by statute or ordinance to control or prohibit the temporary use of the streets by business men in the transaction of their business.

[3] The Act of January 26, 1887, authorized and empowered the commissioners to make, modify, and enforce usual and reasonable police regulations, for 11 distinct and clearly specified purposes. The third paragraph of the act authorized the regulation of the use of the streets by licensed venders and is as follows:

"Third. To locate the places where licensed venders on streets and public places shall stand, and change them as often as the public interests require, and to make all the necessary regulations governing their conduct upon the streets in relation to such business."

Of the eleven paragraphs of the act, seven authorized the commissioners to regulate, two to prohibit, one to regulate or prohibit, and one to prescribe reasonable penalties for the violation of the regulations.

The act of 1887 did not authorize the commissioners to prohibit vending on the streets or public places. It simply empowered them to locate and change the stands of licensed venders and to pass regulations governing the conduct of such venders while doing business on the streets. The commissioners were not required by the third paragraph to regulate unlicensed venders and from the powers expressly therein granted no authority can be implied to locate or change stands for such venders or to prohibit the offering for sale or the selling of their wares on public streets or public spaces. To hold otherwise would not only give no effect whatever to the word "licensed," but would result in adding language which Congress did not see fit to use and in broadening the statute beyond the meaning of its plain and unambiguous language. Congress could have authorized the commissioners to forbid all sales on the public streets or spaces or to limit such sales to licensed venders. It elected not to do so, and under the act of 1887, it does not lie with the commissioners to exercise a power which the Legislature of the District saw fit to withhold. As venders of booklets are unlicensed venders (see 32 Stat. 622–626, 627) we must hold that the third paragraph of the Act of January 26, 1887, was not a grant of power to forbid sales by them on streets or public spaces.

[4] It is contended, however, that the plaintiff in error by offering for sale and selling his booklet on the streets violated the following police regulation of the commissioners which it is claimed they were authorized to pass by the Joint Resolution of February 26, 1892 (27 Stat. 394):

"Except as otherwise provided in these regulations, no person shall sell or offer for sale any merchandise, article or thing whatever from or upon any public space."

As sales by licensed venders and sales of commodities from boats while at the dock are apparently the only sales permitted (section 1 and 2, art. III, of the Police Regulations), the terms of that regulation are broad enough to make every newsboy selling newspapers on the street a law breaker and to subject to arrest and punishment any person if he sell a pencil, a harmless toy, or knicknack while moving along the street, annoying nobody and endangering the life, limb, or health of no one. Congress, if it had been so minded, could have authorized such a sweeping, not to say unusual and unreasonable, regulation, but it chose to limit the power of the commissioners to such—

"reasonable and usual police regulations in addition to those made under the Act of January 26, 1887, as they may deem necessary for the protection of the lives, limbs, health, comfort and quiet of all persons and the protection of all persons within the District of Columbia." Joint Resolution February 26, 1892; 27 Stat. 394.

Street sales are not by and of themselves a threat to the lives, limbs, health, comfort, or quiet of the people, as is evidenced by the fact that licensed venders are permitted to make such sales both by statute and police regulation. 24 Stat. 368; 33 Stat. 10. The things sold and the way they are sold might menace the lives, limbs, health, comfort, or quiet of the people and under the authority granted by the resolution the commissioners might well regulate the conduct of street venders and forbid sales of goods, wares, or merchandise likely to endanger, discommode, annoy, or disturb the public. The commissioners, however, were not vested with power to prohibit harmless street sales which could neither accomplish nor threaten any of the evils mentioned in the resolution.

We find, first, that prior to the Act of January 26, 1887, there was no statute or ordinance which denied to street venders the use of the streets; second, that the Act of January 26, 1887, authorized the commissioners to locate and change the stands of licensed venders and to regulate their conduct on the streets, but that it did not authorize the prohibition of street sales by street venders, whether licensed or unlicensed; third, that the Joint Resolution of February 26, 1892, authorized the commissioners to pass reasonable and usual police regulations necessary for the protection of all persons in the District and for the protection of their lives, limbs, health, and comfort, but that it did not authorize the prohibition of street sales which did not endanger, disturb, annoy, or incommode the people and which by themselves would not produce results at variance with the purposes contemplated by the resolution; fourth, that the regulation of March 27, 1922, under which plaintiff in error was convicted is beyond the powers of the commission-

289 F.—36

ers and that therefore the conviction of the plaintiff in error for the violation thereof cannot be sustained.

The judgment is reversed.

The CHIEF JUSTICE dissents.